IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DEBORAH GROOMS | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| CITY OF PHILADELPHIA, ET AL. | : | NO. 17-2696 |

**MEMORANDUM**

Padova, J.                                                      September 28, 2018

Plaintiff Deborah Grooms has brought this action against the City of Philadelphia, the City of Philadelphia Police Department, and Corporal Harold Poles,[1] asserting violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and violations of the Pennsylvania Human Relations Act, 33 P.S. § 955 et seq. ("PHRA"). Before the Court is Defendants' Motion for Summary Judgment. For the following reasons, we grant the Motion in part and deny the Motion in part.

**I.    BACKGROUND**

Plaintiff is a police officer employed by Defendant the City of Philadelphia Police Department ("PPD"). (Pl.'s Dep. (Defs.' Ex. 4) at 10.) She has worked for the PPD since November 17, 2008. (Id.) The incidents that form the basis of Plaintiff's claims began on June 30, 2016, while she was assigned to the 14th District. (Id. at 14-16.) Plaintiff's supervisors at the 14th District were Defendant Corporal Poles, Sergeant Shevlin, Lieutenant Dandridge, and Captain Kinebrew. (Id. at 22.) Plaintiff contends that, while she was assigned to the 14th District, she was the victim of discrimination, retaliation, and sexual harassment by Corporal Poles.

---

[1] The Complaint erroneously refers to Corporal Harold Poles as "Norman Poles." (Compl. ¶ 5; Ans. ¶ 5.)

Plaintiff reported to the PPD Internal Affairs Division that, on June 30, 2016, while Plaintiff and Corporal Poles were alone in the roll call room of the police station, Corporal Poles told her that she looked edible and asked her, "when are you going to let me suck on those melons?" (Defs.' Ex. 3 at D-150.) Corporal Poles also asked Plaintiff, "when are you going to let me come to your new house and perform for you and give me some?" and "you think I am old and can't perform?" (Id.) Plaintiff also reported to the PPD Internal Affairs Division another comment that Corporal Poles made to her. Plaintiff stated that Corporal Poles told her the following, in connection with a separate, internal sexual harassment investigation that another female police officer initiated against Corporal Poles: "[d]o you think I want something from her; I wouldn't want something like that from her, but you, that's what I would want." (Defs.' Ex. 3 at D-151.) When the PPD Internal Affairs Division interviewed Corporal Poles, he denied making any of these remarks to Plaintiff. (Id. at D-181-82.)

In a separate incident, on June 13, 2016, Lieutenant Dandridge pretended to be another police officer and asked Plaintiff to go out with him. (Pl.'s Dep. at 33-34; Defs.' Ex. 1 at D-020.) Lieutenant Dandridge's supervisor, Captain Sekou Kinebrew, described the incident as follows: Lieutenant Dandridge utilized the cell phone belonging to Police Officer Henry Simmons to call Plaintiff. (Defs.' Ex. 1 at D-020.) Lieutenant Dandridge had Officer Simmons' permission to use the phone to call Plaintiff to inform her "that her request for a restricted-duty extension had been approved." (Id.) However, he "initiated the conversation by pretending to be P.O Simmons, and asked P.O Grooms to 'go out with [him].'" (Id.) Lieutenant Dandridge identified himself prior to the end of the telephone conversation and later contacted Plaintiff to apologize for his actions. (Id.) Captain Kinebrew issued Lieutenant Dandridge a Counseling Form in which he cautioned Lieutenant Dandridge about his unprofessional communication, criticized his "poor

2

supervisory judgment," and stated that "[f]uture violations of this type may result in formal disciplinary action." (Id.)

On August 7, 2016, Plaintiff met with Corporal Poles and Sergeant Donna Jean Bachmayer, a female police officer who did not supervise Plaintiff, to discuss lateness issues. (Pl.'s Dep. at 26.) During the meeting, Corporal Poles accused Plaintiff of habitual lateness.[2] Corporal Poles stated, in a contemporaneous memorandum, that Plaintiff responded to his accusation by saying that she worked directly for the Captain and not for Corporal Poles. (Defs.' Ex. 1 at D-031.) Corporal Poles recounted in his memorandum that he told Plaintiff that he had an obligation to run his department professionally, and that if she continued to be late, he would have to document it. (Id.) Corporal Poles further wrote in that memorandum that Plaintiff responded that she had documentation of her own, and that if Corporal Poles did a memo about her, she would do one about him. (Id.) Sergeant Bachmayer told the PPD Internal Affairs Division, in an interview, that Plaintiff said the following: "If you want to get into documentation, I have my own documentation; I'll do my own documenting." (Defs.' Ex. 3 at D-172.)

On the same day that Corporal Poles and Sergeant Bachmayer met with Plaintiff to discuss her tardiness, Plaintiff met with Sergeant Christopher Shevlin and told him about the inappropriate comments that Poles made to her on June 30, 2016.[3] (Pl.'s Dep. at 23.) After this meeting, Sergeant Shevlin gave Plaintiff a copy of Directive 8.7, the Police Department's Equal Employment Complaint Procedures. (Defs.' Ex. 1 at D-001.) The following day, August 8, 2016, Plaintiff reported her complaints about Corporal Poles' behavior to Lieutenant Dandridge,

---

[2] Plaintiff disputes the truth of the lateness allegations and claims that her alleged lateness had not been mentioned before the meeting. (Pl.'s Ans. Stmt. Material Facts ¶ 4.)

[3] Plaintiff erroneously states in her deposition that this conversation with Sergeant Shevlin took place on August 7, 2017. (Pl.'s Dep. at 23.)

3

and the Department initiated an EEO complaint investigation. (Pl.'s Dep. at 27; Defs.' Ex. 1 at D-030; Defs.' Ex. 3 at D-156-57.) Plaintiff gave her statement to investigators on the same day. (Pl.'s Dep. at 27-28.) The PPD Internal Affairs Division, which handled the investigation, also interviewed Sergeant Bachmayer, Sergeant Shevlin, and Corporal Poles (Defs.' Ex. 3 at D-158–184) and eventually concluded that the charges against Corporal Poles were not sustained. (Defs.' Stmt. of Undisputed Material Facts ¶ 12; Pl.'s Ans. Stmt. of Material Facts ¶ 12.)

On September 23, 2016, Sergeant Shevlin gave Plaintiff a Counseling Form because she allegedly arrived two hours late for her tour of duty without notifying a supervisor. (Defs.' Ex. 1 at D-002.) The Counseling Form states that Plaintiff was "given this counseling memo in reference to [her] consistent lateness."[4] (Id.) Plaintiff was charged two hours of vacation time for this infraction and was notified that if she failed to report at her scheduled time in the future, she would be "carried Without Pay (W) for any lateness." (Id.) Plaintiff refused to sign the Counseling Form. (Id.; Pl.'s Dep. at 30.) Plaintiff maintains that she had spoken with another officer in the 14th District and notified the other officer that she would be late to work that day. (Defs.' Stmt. of Undisputed Material Facts ¶ 24; Pl.'s Ans. Stmt. Material Facts ¶ 24.) There is no documentation that she notified this other officer that she would be late on September 23, 2016. (Defs.' Stmt. of Undisputed Material Facts ¶ 25; Pl.'s Ans. Stmt. of Material Facts ¶ 25).

The Complaint asserts two claims for relief. Count I of the Complaint asserts a claim for violation of Title VII. In Count I, Plaintiff contends that Defendants discriminated against her on the basis of her sex in violation of Title VII by subjecting her to gender discrimination, a hostile work environment, and retaliation. Count II of the Complaint asserts a claim for violation of the PHRA. In Count II, Plaintiff contends that Defendants discriminated against her on the basis of

---

[4] Plaintiff disputes the allegation of consistent lateness. (Defs.' Stmt. of Undisputed Material Facts ¶ 22; Pl.'s Ans. Stmt. of Material Facts ¶ 22.)

her sex in violation of the PHRA by subjecting her to gender discrimination, a hostile work environment, and retaliation. Plaintiff seeks back pay and front pay, attorney's fees, costs and expenses of litigation, and punitive damages.

## II. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials [that the moving party has cited] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

5

In evaluating the evidence, we take the facts "in the light most favorable" to the nonmoving party and "draw all reasonable inferences" in its favor. Lamont v. New Jersey, 637 F.3d 177, 179 n.1 (3d Cir. 2011) (citing Scott v. Harris, 550 U.S. 372, 378 (2007)). "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000) (citations omitted), aff'd 29 F. App'x 100 (3d Cir. 2002). Moreover, evidence introduced to defeat or support a motion for summary judgment must be capable of being admissible at trial. Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co., 998 F.2d 1224, 1234 n.9 (3d Cir. 1993).

### III. DISCUSSION

We analyze Plaintiff's federal and state claims under the same standard because "[c]laims arising under the PHRA are governed by the same legal standard as that applied to Title VII." Lepore v. Lanvision Sys., Inc., 113 F. App'x 449, 452 (3d Cir. 2004) (citation omitted). See also Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) (stating that the Pennsylvania courts "generally interpret the PHRA in accord with its federal counterparts" (citations omitted)); Atkinson v. LaFayette Coll., 460 F.3d 447, 454 n.6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims." (citing Kelly, 94 F.3d at 105)).

**A. The Philadelphia Police Department**

Defendants argue that the PPD must be dismissed as a Defendant in this action because it is not a separate legal entity that can be sued. "[T]he Police Department cannot be sued, as it is not a separate legal entity from the City of Philadelphia." Johnson v. City of Philadelphia Police Dep't, Civ. A. No. 18-300, 2018 WL 692408, at *2 (E.D. Pa. Feb. 1, 2018) (citing Regalbuto v. City of Philadelphia, 937 F. Supp. 374, 377 (E.D. Pa. 1995), aff'd, 91 F.3d 125 (3d Cir. 1996)); see also 53 Pa. Stat. Ann. § 16257. Accordingly, we grant Defendants' Motion for Summary

6

Judgment insofar as it seeks dismissal of all claims asserted against the Philadelphia Police Department, and we dismiss the Philadelphia Police Department as a Defendant in this action.[5]

### B. Plaintiff's Gender Discrimination Claim

Plaintiff claims that she was subjected to gender discrimination in her workplace in violation of Title VII and the PHRA. Defendants argue that they are entitled to the entry of summary judgment in their favor as to Plaintiff's gender discrimination claim because Plaintiff cannot meet her burden of demonstrating that she was subjected to an adverse employment action. To succeed on a discrimination claim under Title VII, a plaintiff must prove that "an employer has 'treated [a] particular person less favorably than others because of' a protected trait . . . [and] 'that the defendant had a discriminatory intent or motive'. . . ." Ricci v. DeStefano, 557 U.S. 557, 577 (2009) (first alteration in original) (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 985-986 (1988)). In the absence of direct evidence of discrimination, Title VII discrimination claims are analyzed under the burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Kant v. Seton Hall Univ., 289 F. App'x 564, 566 (3d Cir. 2008).

"Under McDonnell Douglas, the plaintiff bears the initial burden of demonstrating a prima facie case of unlawful discrimination . . . ." Dellapenna v. Tredyffrin/Easttown Sch. Dist., 449 F. App'x 209, 213 (3d Cir. 2011) (citing McDonnell Douglas, 411 U.S. at 802). In order to establish a prima facie case of gender discrimination, a plaintiff must "show that: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) members of the opposite sex were treated more favorably." Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013) (citing Hugh v. Butler Cty. Family YMCA, 418 F.3d 265,

---

[5] Defendants have not raised the issue of whether Corporal Poles can be held personally liable under Title VII or the PHRA, so we do not address that issue.

7

267 (3d Cir. 2005)). A plaintiff may, however, "also meet the last element by showing that the adverse employment action 'occurred under circumstances that could give rise to an inference of intentional discrimination.'" Id. (quoting Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008)).

If the Plaintiff is able to establish a prima facie case of gender based discrimination, "'the burden of production [then] shifts to the defendant to offer a legitimate non-discriminatory [justification] for the adverse employment action." Id. (alterations in original) (quoting Smith v. City of Allentown, 589 F.3d 684, 690 (3d Cir. 2009); and citing Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644 n.5 (3d Cir. 1998)). "This burden is 'relatively light' and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." Id. (quoting Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006); and citing Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012)). "At this stage, 'the defendant need not prove that the articulated reason actually motivated its conduct.'" Id. (quoting Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003)).

If the Defendants satisfy their burden of offering a legitimate, non-discriminatory reason for the adverse employment action, "the McDonnell Douglas analysis shifts the burden of production back to the plaintiff to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." Id. (citing Fuentes v. Perskie, 32 F.3d 759, 764-65 (3d Cir. 1994); and Sarullo v. U.S. Postal Serv., 352 F.3d 789, 799-800 (3d Cir. 2003)). "To make a showing of pretext, 'the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory

8

reason was more likely than not a motivating or determinative cause of the employer's action.'" Id. (quoting Fuentes, 32 F.3d at 764).

Defendants do not dispute that Plaintiff belongs to a protected class and that she was qualified for her position. They argue only that she cannot satisfy her burden of establishing a prima facie case because she was not subjected to an adverse employment action. The Third Circuit has "defined an 'adverse employment action' as an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" Mieczkowski v. York City Sch. Dist., 414 F. App'x 441, 445 (3d Cir. 2011) (quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001)).

Plaintiff maintains that she was subject to the following adverse employment actions: 1) the loss of two hours of vacation time for allegedly being late on September 23, 2016; 2) the September 23, 2016 Counseling Form regarding her lateness; 3) the August 7, 2016 meeting with Corporal Poles and Sergeant Bachmayer regarding lateness; and 4) multiple false accusations of lateness. (Defs.' Ex. 1 at D-02; Pl.'s Dep. at 26.) Defendants maintain that Plaintiff's loss of two hours of annual leave does not constitute an adverse employment action. To the extent that this loss is equivalent to a loss of salary, a one-time docking of a small amount of pay is not considered to be "serious and tangible" enough to constitute a material change to the terms of employment because there is "no permanent reduction in [the employee's] compensation." Deans v. Kennedy House, Inc., 998 F. Supp. 2d 393, 411 (E.D. Pa. 2014) ("Deans I"), aff'd, 587 F. App'x 731 (3d Cir. 2014) ("Deans II"). See also Deans II, 587 F. App'x at 734 (noting that "15 minutes of docked pay is simply too 'negligible' to qualify as an adverse employment action especially given that [plaintiff] presented no evidence that this loss of income affected his well-being" (citation omitted)). Here, Plaintiff's loss of two hours of annual leave is a one-time

9

event, and there is no evidence that it affected her well-being. We conclude that Plaintiff has not pointed to any evidence in the record that could establish that her loss of two hours of annual leave was an adverse employment action.

"Written reprimands and other disciplinary actions," such as the September 23, 2016 Counseling Form and the August 7, 2016 meeting with Corporal Poles and Sergeant Bachmayer, only constitute adverse employment actions "if they effect a material change in the terms or conditions of [the] employment." Deans I, 998 F. Supp. 2d at 410 (alteration in original) (quotation omitted). Plaintiff has pointed to no evidence that her August 7, 2016 meeting with Corporal Poles and Sergeant Bachmayer effected a material change in the terms or conditions of her employment with the PPD. Additionally, the September 23, 2016 Counseling Form cannot constitute an adverse employment action because the "PPD uses counseling forms as a tool for training employees and does not consider them to be disciplinary actions." Torres v. Deblasis, 959 F. Supp. 2d 772, 781 (E.D. Pa. 2013). The PPD does not place Counseling Forms "in an employee's personnel file." Id. "Furthermore, [Counseling Forms] cannot result in any disciplinary action being taken against an employee such as a loss in pay, transfer, or suspension nor can they influence an employee's eligibility for promotions or raises." Id.; see also Petro-Ryder v. Capt. Jacqueline Pittman, Civ. A. No. 15-2908, 2015 WL 8731623, at *7 (E.D. Pa. Dec. 11, 2015) (rejecting plaintiff's argument that a counseling memorandum constituted an adverse employment action for purposes of a Title VII discrimination claim (citing Torres 959 F. Supp. 2d at 781)). Moreover, Plaintiff has pointed to no evidence that the false accusations of lateness effected any material change in the terms and conditions of her employment.

Plaintiff has failed to point to record evidence that would establish that the August 7, 2016 meeting, the September 23, 2016 Counseling Form, and the false accusations of lateness constitute

adverse employment actions. Consequently, we conclude that Plaintiff has failed to satisfy this element of her prima facie case of employment discrimination. In light of Plaintiff's failure to satisfy her burden at the first step of the McDonnell Douglas framework, Burton, 707 F.3d at 426 (citation omitted), we further conclude that Defendants are entitled to the entry of judgment as a matter of law with respect to Plaintiff's claims of employment discrimination. We therefore grant the Motion for Summary Judgment as to Plaintiff's claims of employment discrimination in violation of Title VII and the PHRA.

### C. Hostile Work Environment

Plaintiff claims that she was subjected to sexual harassment in her workplace, creating a hostile work environment in violation of Title VII and the PHRA. "Title VII prohibits sexual harassment that is 'sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment.'" Kahan v. Slippery Rock Univ., 50 F. Supp. 3d 667, 696 (W.D. Pa. 2014), aff'd, 664 F. App'x 170 (3d Cir. 2016) (alteration in original) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)). Defendants argue that they are entitled to the entry of summary judgment in their favor as to Plaintiff's hostile work environment claim on two grounds. They first argue that they are entitled to summary judgment as to these claims because the record evidence does not establish that the sexual harassment that Plaintiff claims to have experienced was sufficiently severe or pervasive to create a hostile work environment. They also argue that the City of Philadelphia is entitled to summary judgment as to these claims because the record does not support respondeat superior liability in this case.

### 1. Severe or pervasive harassment

To succeed on her hostile work environment claim against Defendants under Title VII and the PHRA, Plaintiff must prove the following "'(1) [she] suffered intentional discrimination because of [her] sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected [her]; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of respondeat superior liability.'" Moody v. Atlantic City Bd. of Educ., 870 F.3d 206, 213 (3d Cir. 2017) (quoting Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013); additional citation omitted). "For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." Meritor, 477 U.S. at 67 (alteration in original) (emphasis added) (quotation omitted). "[C]onduct must be extreme to amount to a change in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). "The question of 'whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Moody, 870 F.3d at 215 (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001)). Thus, "the purview of Title VII does not extend to all workplace difficulties, even where the conduct at issue may be crass and unwarranted." Selvato v. SEPTA, 143 F. Supp. 3d 257, 266 (E.D. Pa. 2015), aff'd, 658 F. App'x 52 (3d Cir. 2016) (citations omitted). Moreover, "allegations of isolated or single incidents of harassment, unless extremely serious, are insufficient to establish a cognizable hostile work environment claim." Id. (citing Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165-67 (3d Cir. 2013); and Cibula v. Fox, 570 F. App'x 129, 135-36 (3d Cir. 2014)).

The record contains evidence of three instances in which two employees of the PPD, Corporal Poles and Sergeant Dandridge, made comments to Plaintiff that were sexual in nature. First, the record contains the PPD Internal Affairs Division's records that document Plaintiff's statements that, on June 30, 2016, Corporal Poles told her that she looked edible and asked her: (1) "when are you going to let me suck on those melons?" (2) "when are you going to let me come to your new house and perform for you and give me some?" and (3) "you think I am old and can't perform?" (Defs.' Ex. 3 at D-150.) Second, the record reflects that Plaintiff told the PPD Internal Affairs Division that Corporal Poles made the following remark to her, in reference to a complaint made against him by a different officer: "Do you think I want something from her; I wouldn't want something like that from her, but you, that's what I would want." (Id. at D-151.) And, third, there is evidence in the record that, on June 13, 2016, Sergeant Dandridge used another police officer's cell phone to call Plaintiff and ask her out on a date, while pretending to be the officer whose cell phone he was using. (Defs.' Ex. 1 at D-020.)

As detailed above, there is record evidence that, on June 30, 2016, Plaintiff's superior, Corporal Poles, vividly described to Plaintiff sexual acts that he wanted to perform on her. (Defs.' Ex. 3 at D-150.) Drawing all inferences in favor of Plaintiff, Lamont, 37 F.3d at 179 n.1, we find that Plaintiff could have felt threatened by these comments because she was alone with Corporal Poles when he made those comments. (Defs.' Stmt. of Undisputed Material Facts ¶ 5; Pl.'s Ans. Stmt. of Material Facts ¶ 5.) We conclude that the evidence of these comments, the evidence that Corporal Poles made another sexual remark to Plaintiff, and the evidence that Sergeant Dandridge asked Plaintiff on a date while he was pretending to be a different police officer create a genuine issue of material fact regarding whether the environment experienced by Plaintiff was sufficiently severe or pervasive to create a hostile work environment in violation of

Title VII and the PHRA. See Castleberry v. STI Group, 863 F.3d 259, 264-65 (3d Cir. 2017) (holding that a "a single isolated incident," such as a superior using a racially charged slur in front of plaintiff and plaintiff's coworkers, could be sufficiently serious to "create a hostile work environment"); Winkler v. Progressive. Bus. Publ'ns, 200 F. Supp. 3d 514, 519 (E.D. Pa. 2016) (concluding that allegation of single incident of co-worker reaching under plaintiff's shirt and putting money in her bra was "the type of physically threatening and humiliating conduct that" was sufficiently serious to plead a hostile work environment claim); El v. Advance Stores Co., Civ. A. No. 17-2345, 2017 WL 6606887, at *8-9 (E.D. Pa. Dec. 27, 2017) (denying defendant's motion for summary judgment with respect to plaintiff's claim that she was subjected to a hostile work environment based on her race and gender where the record contained evidence that plaintiff's supervisor sent her a text message "threatening 'kill black bitches'" because a jury could find that the "discriminatory and violence threatening text message [was] severe enough to create a hostile work environment based on gender" and was also "severe enough to create a hostile work environment based on race"). See also Williams v. Mercy Health Sys., 866 F. Supp. 2d 490, 501-02 (E.D. Pa. 2012) (denying motion for summary judgment as to hostile work environment claim because the court could not "say as a matter of law that Defendants' alleged conduct . . . was not severe or pervasive to the extent that it changed the conditions of Plaintiff's employment" in light of evidence that plaintiff's supervisor called plaintiff racially charged slurs on three occasions and made other racially charged comments on two other occasions). Accordingly, we deny Defendants' Motion for Summary Judgment as to their argument that there is insufficient evidence in the summary judgment record to establish that the sexual harassment that Plaintiff claims to have experienced was severe or pervasive enough to create a hostile work environment.

### 2. Respondeat superior liability

Defendants also argue that the City of Philadelphia is entitled to summary judgment in its favor as to Plaintiff's hostile work environment claims because the evidence of record does not support the imposition of respondeat superior liability. While Defendants cite no authority to support this argument, they appear to rely on the Ellerth/Faragher defense. Pursuant to the Ellerth/Faragher defense, "[a]n employer can establish an affirmative defense to liability for a supervisor's creation of a hostile work environment by showing '(1) that it exercised reasonable care to prevent and promptly correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities that were provided.'" Moody, 870 F.3d at 218 (quoting Vance v. Ball State Univ., 570 U.S. 421, 430 (2013)). Defendants argue that they cannot be liable for creating a hostile work environment because the PPD promptly investigated Plaintiff's claim regarding the remarks made by Corporal Poles on June 30, 2016. However, as Plaintiff argues, the defense does not apply in this case because Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities provided by the PPD, as she fully cooperated with the investigation of her claims. Consequently, we deny Defendants' Motion for Summary Judgment as to their argument that Plaintiff has failed to establish respondeat superior liability. We therefore deny the Motion for Summary Judgment as to Plaintiff's claims that she was subjected to a hostile work environment in violation of Title VII and the PHRA.

**D. Retaliation**

Plaintiff claims that she was retaliated against for reporting sexual harassment in violation of Title VII and the PHRA. She further claims that this retaliation took the form of Defendants falsely accusing her of habitual lateness, improperly marking her late, altering her time cards,

verbally reprimanding her for lateness, giving her a written Counseling Form for lateness, and causing her to lose two hours of annual leave on September 23, 2016. Defendants argue that they are entitled to the entry of summary judgment in their favor as to Plaintiff's retaliation claims because Plaintiff cannot support her burden of establishing a prima facie case of retaliation.

"In the absence of direct evidence of retaliation, retaliation claims . . . typically proceed under the McDonnell Douglas framework." Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005) (citations and footnotes omitted). To establish a prima facie case of retaliation, a plaintiff must show that: "(1) [s]he engaged in protected activity, (2) [her] employer took an adverse employment action against [her], and (3) there was a causal connection between [her] participation in the protected activity and the adverse employment action." Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 798 (3d Cir. 2010) (footnote omitted) (citing Moore v. City of Philadelphia, 461 F.3d 331, 340-41) (3d Cir. 2006)). "As with discrimination claims, if a plaintiff establishes a *prima facie* case, the employer must show a legitimate, non-discriminatory reason for the adverse action. The burden then shifts back to the plaintiff to demonstrate that the offered reason is pretextual." Warfield v. SEPTA, 460 F. App'x 127, 131 (3d Cir. 2012) (citing Moore, 461 F.3d at 342). "Although the burden of production of evidence shifts back and forth, the plaintiff has the ultimate burden of persuasion at all times." Daniels v. Sch. Dist. of Philadelphia, 776 F.3d 181, 193 (3d Cir. 2015) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)).

Defendants argue that Plaintiff cannot establish a prima facie case of retaliation because she did not experience an adverse employment action in retaliation for her protected activity. In retaliation cases, the alleged retaliation must occur contemporaneously with or after the protected activity, i.e., reporting sexual harassment on August 8, 2016. Petro-Ryder, 2015 WL 8731623, at

16

*12 (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000)). As a result, evidence of pre-August 8, 2016 actions taken by Plaintiff's employer cannot support a prima facie case of retaliation. This means that Plaintiff cannot rely on either her August 7, 2016 meeting with Corporal Poles and Sergeant Bachmayer regarding her lateness or on all but two of the 12 timesheets showing that she was late. (See Pl.'s Dep. at 26; Defs.' Ex. 1 at D-031; Defs.' Ex. 2 at D-134–145.) Consequently, the only record evidence of allegedly retaliatory actions taken by Defendants after Plaintiff's August 8, 2016 protected activity is: 1) the PPD's marking Plaintiff 1.5 hours late on August 28, 2016 and two hours late on September 23, 2016; 2) the September 23, 2016 Counseling Form; and 3) the PPD's charging Plaintiff two hours of annual leave for being two hours late on that day. (Defs.' Ex. 2 at D-144–45, D-147.) "For an employer's action to satisfy the second prong of a prima facie case of retaliation, the plaintiff 'must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Daniels, 776 F.3d at 195 (citing Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68; and Moore, 461 F.3d at 341). Unlike adverse actions under the antidiscrimination provision, adverse actions under the antiretaliation provision are "not limited to discriminatory actions that affect the terms and conditions of employment." Burlington N. & Santa Fe Ry. Co., 548 U.S. at 64.

Plaintiff contends that Defendants "falsely accus[ed] her of habitual lateness, improperly mark[ed] her late and alter[ed] her time cards." (Pl.'s Mem. at 8.) However, there is no record evidence that supports this contention. Since "conclusory allegations . . . are insufficient to raise genuine issues of material fact," Boykins, 78 F. Supp. 2d at 408, we conclude that there is no genuine issue of material fact concerning whether Plaintiff experienced an adverse employment

action based on the falsification of her attendance records. Similarly, the Counseling Form does not constitute an adverse employment action because the issuance of an internal memorandum that has no material consequences to an employee would not dissuade a reasonable employee from making a charge of discrimination. See Fleck v. Wilmac Corp., Civ. A. No. 10-5562, 2012 WL 1033472, at *13 (E.D. Pa. Mar. 27, 2012) (rejecting argument that disciplinary letter that resulted in no materially adverse consequences was an action that would dissuade a reasonable employee from taking a protected action); Cole v. Fed. Express Corp., Civ. A. No. 06-3485, 2008 WL 4307090, at *6 (E.D. Pa. Sept. 19, 2008) (concluding that a meeting with plaintiff to discuss tardiness and absences and placing a note in her file about the meeting was not an adverse employment action under the Title VII retaliation analysis; Alers v. City of Philadelphia, 919 F. Supp. 2d 528, 549 (E.D. Pa. 2013) (finding that disciplinary investigation that resulted in no material injury, harm, or discipline was not an adverse employment action for purposes of Title VII retaliation claim). Moreover, docking a small amount of an employee's pay does not constitute an adverse employment action under the Title VII retaliation analysis. See Deans I, 998 F. Supp. 2d at 416 (concluding that docking fifteen minutes of pay was not an adverse employment action because it would not dissuade a reasonable worker from making a charge of discrimination).

Plaintiff has failed to point to record evidence that the PPD subjected her to an adverse employment action that would dissuade a reasonable employee from engaging in protected activity. Daniels, 776 F.3d at 195 (citations omitted). Consequently, we conclude that Plaintiff has failed to satisfy this element of her prima facie case of retaliation. In light of Plaintiff's failure to satisfy her burden at the first step of the McDonnell Douglas framework, we further conclude that Defendants are entitled to the entry of judgment in their favor on Plaintiff's claims of

retaliation. We therefore grant the Motion for Summary Judgment as to Plaintiff's claims of retaliation in violation of Title VII and the PHRA.

## IV. CONCLUSION

For the foregoing reasons, we grant Defendants' Motion for Summary Judgment in part and deny Defendants' Motion for Summary Judgment in part. Specifically, we grant the Motion insofar as it seeks dismissal of the claims against the Philadelphia Police Department and judgment in Defendants' favor on the claims of gender discrimination and retaliation. We deny the Motion insofar as it seeks judgment in Defendants' favor on Plaintiff's hostile work environment claim. An appropriate Order follows.

BY THE COURT:

_____

John R. Padova, J.